IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

FCCI INSURANCE COMPANY,                     CIVIL DIVISION

            Plaintiff,                         NO.

v.

JONATHAN DEAL, an individual,
CHRISTYANNE DEAL, an individual,
PASCHAL CAPITAL MANAGEMENT, LLC, and,
WORTHINGTON INDUSTRIES, INC., a corporation,

            Defendants.

**COMPLAINT IN CIVIL ACTION**

AND NOW, comes the Plaintiff, FCCI Insurance Company ("FCCI"), by and through its undersigned attorneys, Dickie, McCamey & Chilcote, P.C. and W. Alan Torrance, Jr., Esquire, and files the within COMPLAINT and in support thereof avers as follows:

**PARTIES**

1. Plaintiff, FCCI Insurance Company ("FCCI" or "Surety") is a Florida corporation with its principal place of business at 6300 University Parkway, Sarasota, Florida and is authorized to conduct surety business in the Commonwealth of Pennsylvania.

2. Defendant Jonathan Deal is an adult individual who is a resident of, and domiciled in, the Commonwealth of Pennsylvania.

3. Defendant Christyanne Deal is an adult individual who is a resident of, and domiciled in, the Commonwealth of Pennsylvania.

4. Defendant Paschal Capital Management, LLC ("Paschal") is a limited liability corporation whose members include Defendant Christyanne Deal. Upon information and belief, no members of Paschal are citizens and/or residents of Florida.

5. Defendant Worthington Industries Inc., is, upon information and belief, a Pennsylvania corporation with its principal place of business in the Commonwealth of Pennsylvania.

## JURISDICTION AND VENUE

6. This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. §1332 because this action is a dispute between citizens of different states and the amount in controversy exceeds $75,000.00.

7. Venue is proper in this Court pursuant to 28 U.S.C. §1391 because a substantial portion of the events giving rise to this lawsuit occurred in this district. In particular, the indemnity agreement executed by the Defendants in favor of FCCI was entered into and delivered in Washington County, Pennsylvania. In addition, the losses giving rise to this action arose from a project in Westmoreland County, Pennsylvania.

## FACTUAL BACKGROUND

8. FCCI is engaged in the business of issuing surety bonds at the request, and on behalf, of construction contractors, among others.

9. i.e. Power, LLC ("IEP") was in the business of providing electrical construction services for institutional and municipal projects.

10. In order for IEP to qualify and function as a construction contractor on public and private projects, from time to time, IEP was called upon as part of its scope of work, to provide certain types of surety bonds.

11. In general, the purpose of the surety bonds is to ensure the completion of identified projects and/or payment of certain subcontractors for the benefit of the obligees identified on the bonds.

12. On or about July 26, 2024, IEP and the Defendants voluntarily executed a General Indemnity Agreement ("GIA") for the benefit of FCCI.

13. A true and correct copy of the GIA is attached hereto as Exhibit 1.

14. Paragraph XIV of the GIA sets forth the procedure for termination of the liability of an indemnitor.

15. At no time did any Defendant seek to terminate its liability in accordance with the provisions of paragraph XIV of the GIA.

16. Consistent with other forms of credit, Defendants understood and agreed that each of them had continuing obligations to FCCI in conjunction with any surety bond to be provided by FCCI naming IEP as "Principal."

17. The GIA binds the Defendants jointly and severally, to certain obligations including reimbursement of FCCI for all losses it sustains as a result of the issuance of any bond(s) naming IEP as Principal.

18. The GIA states in pertinent part:

**II.  REPRESENTATIONS OF INDEMNITOR –** Each and every indemnitor represents, warrants and guarantees, unconditionally and with the intention that Surety shall detrimentally rely upon such representations without investigation or verification, as follows:

E. Indemnitor acknowledges and agrees that by signing this Agreement that indemnitor is consenting to be liable for indemnification of Surety on Bonds issued to Principal after, and also prior to, the execution of this Agreement.

**IV.  INDEMNITY**

A. Undersigned agree to exonerate, indemnify, keep indemnified and save harmless Surety from and against any and all demands, liabilities, loss, costs, penalties, obligations, interest, damages or expenses of whatever nature or kind, as well as fees of attorneys, engineering and any other outside consulting or expert fees, and all other expenses, costs and fees incurred:

        3.       by reason of any claim, demand, notice, action, lawsuit or cause of whatsoever kind or nature made, asserted or threatened against Surety and in any way related to a Bond;

        5.       procuring or attempting to procure the discharge of Bonds;

        6.       by reason of the failure of Undersigned to perform or comply with any of the covenants and conditions of this Agreement;

        7.       attempting to recover losses or expenses from Undersigned or third parties, whether Surety shall have paid out any such sums or any part thereof, and/or

        8.       in enforcing any of the covenants or conditions of this Agreement.

    B.       Payment by reason of the aforesaid clauses shall be made to Surety by Undersigned promptly, upon demand by Surety, whether or not Surety shall have made any payment therefor and, at Surety's option.

**V.**       **DEFAULT** – There shall be a default with respect to a Contract, and hereunder, if any of the following occur (each a "Default"):

    A.       Principal breaches, forfeits, abandons, repudiates or fails to prosecute diligently the work under any Contract, whether or not justified, and whether actual or alleged.

    B.       Any Obligee declares Principal to be in default.

    C.       Principal's failure to cure or otherwise comply with the terms of a notice to cure from any Obligee.

    F.       Any one of Undersigned breaches any provision of this Agreement, . . . with such breach(es) determined by Surety in its sole and absolute discretion.

    M.       Any claim is made against any Bond.

**VI.**      **SURETY'S RIGHTS**

    A.       In the event of Default as defined above, Surety shall have the absolute right, at is sole option and in its sole discretion, to take any or all of the following actions at the expense of the Undersigned:

  2. Direct any Obligee in writing . . . as Principal's attorney-in-fact, to make or direct all check or wire transfers payable to Principal, but mail or wire transfer them directly to Surety . . . .

  6. Notify any Obligee of Surety's rights to assignment under Paragraph IX hereof.

  9. File an immediate suit to enforce provisions of this Agreement.

**VII. COLLATERAL SECURITY**

 A. If a claim is made against Surety, whether disputed or not, and upon demand from Surety, Undersigned shall deposit with Surety cash or other equivalent in an amount acceptable to Surety . . . as collateral security . . . to protect Surety . . . .

**IX. ASSIGNMENT AND UNIFORM COMMERCIAL CODE**

 A. As security for performance of all provision of this Agreement, . . . Undersigned hereby pledge, . . . assign, transfer and convey to Surety, effective as of this date of the Agreement. . . the following . . . :

 1. All rights in connection with any contract (whether or not bonded by Surety) held by undersigned, including, but not limited to:

  b. Any and all sums due or which may hereafter become due under any contract;

(Ex. 1)

19. In conjunction with the GIA, the Defendants applied for surety credit from FCCI by requesting that it issue certain surety bonds on behalf of IEP on identified projects.

20. In consideration of the execution of the GIA, as well as other consideration, at the request of IEP and the Defendants, FCCI issued bonds naming IEP as principal, including:

**Project:** Sewage Treatment Plant Electrical Gear Replacement, Contract No. 3/2024
<u>Obligee</u>: Latrobe Municipal Authority
<u>Bond Amt.</u>: $1,298,500.00
<u>Bond No.</u>: 2202530
<u>Bond Type:</u> Performance Bond
(A true and correct copy is attached hereto as Ex. 2).

**Project:**   Sewage Treatment Plant Electrical Gear Replacement,
                           Contract No. 3/2024
Obligee:       Latrobe Municipal Authority
Bond Amt.:    $1,298,500.00
Bond No.:     2202530
Bond Type:    Payment Bond
(A true and correct copy is attached hereto as Ex. 3).

21.  Defendants agreed to and accepted the benefits of surety credit in amounts sufficient to facilitate issuance of the bonds.

## THE PROJECT

22.  On or about July 9, 2024, IEP entered into a construction contract ("Contract") with the Latrobe Municipal Authority as owner ("Owner") for Sewage Treatment Plant Electrical Gear Replacement, Contract No. 3/2024. ("Project"). The Contract is attached hereto as Ex. 4.[1]

23.  In connection with the contract for the Project, at the request of IEP, FCCI executed and delivered to the Owner a Performance Bond ("Bond") and Payment Bond each numbered 2202530 with a penal sum in the amounts set forth above, naming the Owner as "Obligee." (Ex. 2, 3).

24.  The notice to proceed with the Project was issued by the Owner on August 12, 2024. Pursuant to the terms of the Contract, the original completion date for the Project was January 15, 2025.

25.  On or about March 5, 2025, Gibson-Thomas Engineering, as engineer of record for the Project, contacted IEP seeking delivery dates for equipment required by the Contract Documents and reminding IEP that the adjusted completion date was January 25, 2025.

---

[1] The Contract incorporates extensive contract documents ("Contract Documents") all of which are in the possession of Defendants and too voluminous to attach to the Complaint.

26. By letter dated May 7, 2025 to IEP, the Owner issued notice that it intended to terminate the Contract if a project schedule for completion of the work was not provided within five (5) business days. (Ex. 5)

27. In response, by e-mail dated May 12, 2025, Defendant Jonathan Deal advised the Engineer, and others, that IEP was out of business and would abandon the Project. (Ex. 6.)

28. By letter dated May 15, 2025, the Obligee notified FCCI of IEP's default and made demand under the Bond.

30. In response to the Obligee's demand, FCCI promptly initiated an investigation to evaluate the options for discharging its duty under the Bond.

31. In so doing, FCCI retained a construction consultant, Forcon International, Inc., as well as the undersigned counsel, to investigate the status of the work and facilitate a resolution with the Obligee.

32. By letter dated May 20, 2025, FCCI made demand to IEP, Jonathan and Christyanne Deal to discharge their obligations under the GAI.

33. One option available to FCCI under the terms of the Bond was to tender a completion contractor to complete the Project and, in conjunction therewith, issue payment to the Obligee for the appropriate cost to complete the Project over and above the balance of remaining contract funds held by the Obligee.

34. FCCI proposed a completion contractor via a formal Tender Agreement which included the payment of $350,532.77 by FCCI to Obligee.

35. The Obligee rejected the Tender Agreement but has agreed to accept the Payment as a discharge of FCCI's obligations to complete the Project.

7

36. FCCI tendered payment in the amount of $350,532.77 to Obligee by letter dated October 23, 2025. ("Payment").

37. The Obligee asserts that it is entitled to reimbursement of engineering fees over and above the amount of the Payment. In the event the Obligee seeks any recovery over and above the Payment, and in response thereto FCCI agrees to issue payment in some amount, FCCI reserves the right to amend the amount sought for any additional losses.

38. On repeated occasions, FCCI has demanded that the Defendants discharge their duties under the GAI and Pennsylvania law, including reimbursement of FCCI for its current and projected losses. To date, no payment has been received from or on behalf of any Defendant.

39. As a direct and proximate result of the conduct of the Defendants as set forth herein, FCCI has and/or will sustain out of pocket losses, including attorney's and consulting fees in excess of $400,000.00.

40. In response to the claim from the Obligee and FCCI's assertions of its rights under the GIA and Pennsylvania law for reimbursement and otherwise, FCCI has and will continue to incur attorney's and consulting fees, costs and expenses for this matter. FCCI reserves the right to update, through amendment of its claim or otherwise, the amount of its damages and losses up to and through the final resolution of this matter.

41. All conditions precedent to filing this lawsuit have been satisfied.

## COUNT I
## BREACH OF CONTRACT
## FCCI v. ALL DEFENDANTS

42. Plaintiff incorporates by reference all paragraphs above inclusive as though fully set forth herein at length.

43. As set forth above, Defendants are in default and material breach of the GIA for failing to fulfill their obligations under the GIA.

44. FCCI has demanded that the Defendants fulfill their obligations under the GIA.

45. Despite the demands of FCCI, Defendants are in material breach of the GIA in general and in the following particulars in failing to:

    a. Indemnify, exonerate and save FCCI from Loss;

    b. Reimburse FCCI as required; and

    c. Otherwise comply with their obligations to prevent FCCI from sustaining a Loss.

46. As a direct and proximate result of Defendants' breach of the GIA, FCCI has sustained damages and it is likely to sustain additional damages, as aforesaid.

WHEREFORE, Plaintiff FCCI Insurance Company hereby requests judgment as against the Defendants for:

a. Damages and losses set forth above;

b. All expenses incurred to date, including legal fees and consultant fees;

c. Future expenses, fees and costs;

d. Interest; and

e. Such other relief as this Court deems just and proper.

    Respectfully submitted,

    DICKIE, McCAMEY & CHILCOTE, P.C.

    By: /w/ W. Alan Torrance, Jr.
        W. Alan Torrance, Jr., Esquire
        PA I.D.# 49592
        Four Gateway Center
        444 Liberty Ave, Suite 1000
        Pittsburgh, PA 15222
        (412) 392-5272
        *Counsel for Plaintiff FCCI Insurance Company*

34924804.1